A. W. ALEXANDER, Appellant, *v.* A. W. EBERHARDT *et al.*, Respondents.

*Justices' Courts—Constables—Executions—St. Louis.*—Where an execution was issued by a justice of the peace and delivered to a constable of the township, the constable and his securities will be liable to an action for failure to return the execution as required by law. The act of March 4, 1861, (Acts 1861, p. 443,) directing justices elected in the different wards of St. Louis to issue their process to the constables for such wards, is directory, and although a justice issue and deliver an execution to a constable of a different ward, the writ is not void, and the constable and his securities will be liable for failing to serve and return the writ.

*Appeal from St. Louis Law Commissioner's Court.*

*A. Martin,* for appellant.

I. Attention is called to the language of the special act, and to the well established rules of interpretation.

This special law does not expressly prohibit the justice from delivering process to other constables of his township, and the general law says that he shall have the general authority to deliver generally to the constables of his township, unless expressly otherwise directed. (R. C. 1855, p. 963, § 3.) I say it is not specially otherwise directed, and that the act of March 4, 1861, is affirmative only so far as the first clause is concerned of the acts or general law prior thereto.

II. Granting, for the purpose of argument, that the special act of 1861 was a command to justices to issue their process to a constable of their own ward, and not to a constable outside of the ward, unless specially required by the plaintiff in the process, what effect will that law have upon a constable who receives an execution from a justice of another ward, without the previous request of the plaintiff, and fails to return it according to law ?

If there is any irregularity at all, it has reference to some preliminary requirement which has not been followed. The selection of the constable is a matter *in pais*, entirely between the plaintiff and the justice. Whether the preliminary step has been taken is a question for the justice to determine, and

to govern his act according to his best judgment. The statute at most is only directory, and, like many other statutes, will not be allowed to avoid proceedings which are not in strict compliance with it. (Hicks v. Chouteau, 12 Mo. 341 ; Hillman v. Jackson; 1 Minn. 183 ; Hobein v. Drewell, 20 Mo. 447 ; Renick v. Orser, 4 Barb., N. Y., 384.)

The form of an execution, where the plaintiff requests it to be directed to a constable of the township outside of the ward, is precisely the same as where it issues to a constable inside the ward, and for the issuing of which no request or selection is necessary. The execution was therefore regular upon its face. If it was voidable, it was for reasons not apparent upon its face. Now it is a well-established rule of law, that an officer taking an execution regular upon its face is justified in executing it. I do not pretend to say that he may not object to executing the process until it is corrected, if there be any irregularity ; I merely assert that he is justified in carrying it into effect, if he so chooses. But there is an admirable compensation in all the departments of the law. Where privileges are conferred, obligations are always exacted. It therefore follows as a consequence of the rule of law conferring immunities upon the officer, that if he undertakes to carry the process into effect, then he is liable to all persons interested in it, or affected by it, for any misconduct of his in executing it, in the same manner as if the process was regular. He will not be allowed to defend any of his misfeasances in the execution of it, on the ground that it was irregular or voidable. So far as he is concerned, it is a valid process, because he has undertaken to operate under its authority. (Gwinn on Sheriffs, pp. 573–4, and cases there cited.)

*A. M. Gardner,* for respondent.

I. The execution was never delivered to the respondent Eberhardt, nor was it delivered to his deputy, so as to charge him (Eberhardt) with any responsibility therefor.

The record shows that C. H. Smith was the deputy of

Alexander v. Eberhardt et al.

Eberhardt for that part of said St. Louis township outside of the city of St. Louis. Of course, his authority to charge his principal only extended as far as the jurisdiction of his principal. The act of March 4, 1861, (Sess. Acts 1861, p. 443,) under which the execution in question issued, expressly required it to be issued to the constable of the fourth ward, who, the evidence shows, was a Mr. Keating, unless the plaintiff in the execution expressly selected the defendant Eberhardt as the constable to whom said execution should be delivered.

Nothing of that kind was proven or claimed, and respondents therefore insist that even if said Charles H. Smith did receive and collect said execution, Eberhardt and his securities are not responsible for the same; because said Smith had no authority to act for Eberhardt in the fourth ward of the city any more than he had in the State of Illinois, and the delivery to him of said execution by the justice of the fourth ward was illegal, contrary to the statute, and not binding on respondents. (Allen on Sheriffs, 86; Marshall v. Hosmer, 4 Mass. 60.)

A constable is not amenable for the acts of his deputy unless they are performed in the ordinary line of his official duty as prescribed by law. (Gorham v. Gale, 7 Cow. 739.)

II. The execution in question was issued on the 23d of March, 1861. The justice's transcript does not show to whom it was issued, nor when it was made returnable; but the law then in force (see Sess. Acts 1861, p. 28, § 3) required all such executions to be made returnable in twelve months from date, and although the justice who issued it thinks it was made returnable in sixty days, yet whether that was so or not on the face of the execution, it was not really returnable, and could not be by law, in less than twelve months: and the defendants were, in no event, liable in this form of action until the expiration of twelve months from the date of the issuing of said execution; but the record shows that this suit was commenced in January, 1862, and before the return day of the execution.

31—VOL. XXXV.

DRYDEN, Judge, delivered the opinion of the court.

This was a proceeding commenced before a justice of the peace (under § 23, Art. VIII., R. C. 1855, p. 968) against Eberhardt, and his securities, one of the constables of St. Louis township, in St. Louis county, for failing to make return of a *fieri facias*, on the return day thereof, placed in the hands of one his deputies to be executed in favor of Alexander against one Bates. The case comes here by appeal from the Law Commissioner's Court, where there was a verdict and judgment for the defendants below.

Before proceeding to consider the question arising in this case, it is proper to premise that St. Louis township, which comprises the city of St. Louis and a part of the county beyond the city limits, is by law divided into districts, each ward in the city constituting one district, and that part of the township without the city another; and, for the greater convenience of the public needing the services of a justice of the peace, the law further provides that each of said districts shall be entitled to two justices, who are required "to keep their offices and hold their courts within the ward or district" for which they are respectively chosen.

These justices although chosen by and for a subdivision of the township are nevertheless, to all intents and purposes, township officers, having the same jurisdiction throughout their township as have officers of their class in all other townships in the State. (§ 2, 3, 4 & 5, ch. 89, R. C. 1855, p. 920.) The Legislature has also districted the township with reference to the election and location of constables, giving one constable to every two wards in the city and two to that part of the township beyond the city, and requiring them each to reside in the district for which they are respectively elected; they too, like the justices of the peace, are township officers, having like powers and jurisdiction throughout the township as are possessed by constables in all other townships. (§ 1, ch. 29, R. C. 1855, p. 345.)

The evidence in the case tended to show that Eberhardt was a constable for that part of the township outside the city

limits, and that Charles H. Smith was his deputy, duly appointed as such; that Alexander, on or about the 22d of March, 1861, recovered judgment against Bates for fifty dollars and costs before Alpheus Smith, a justice of the peace, who kept his office and held his court in the fourth ward of the city ; that on the day following said justice issued an execution on said judgment returnable in sixty days, and of his own motion and without the knowledge of the plaintiff delivered the same to the said deputy of said Eberhardt to be executed. It further appears that there was another constable for the township residing in the district comprising the fourth ward at the time said execution was issued. The evidence further tended to show that return of the execution was not made in sixty days, or at any time.

Among other instructions given by the court below at the instance of defendants, and objected to by the plaintiff, is the following :

" The jury are instructed, that if they find that the defendant Eberhardt was at the time of the issuing of the execution in the complaint mentioned a constable of the township of St. Louis outside of the city limits and not of the fourth ward of the city of St. Louis, then they should find for the defendants, unless they further find from the evidence that the plaintiff in said execution selected the defendant Eberhardt as the constable to whom said execution should be delivered, and the burden of proof to establish such selection is on the plaintiff." .

The instruction was framed with reference to an act of the General Assembly approved March 4, 1861, in force from and after its passage (Acts of 1861, p. ——), which provides as follows :

" The justices of the peace in the city of St. Louis shall issue their processes in civil cases and deliver the same to the constable of the ward in which their offices are located, and said process shall be executed by the constable of said ward ; provided, however, that nothing in this act shall be so construed as to deprive the plaintiff of the right to select

the constable to whom his process shall be issued and delivered, and, when any plaintiff shall thus select, the justice shall issue and deliver accordingly; and any former law authorizing justices of the city to issue and deliver process in civil cases to constables of any township of St. Louis county is hereby repealed."

The court gave the instruction complained of under a misapprehension of the object and effect of the act of the Legislature just quoted. The design of the law was to substitute, in place of the caprice or mere arbitrary will of the justice of the peace, a definite rule by which the labors, and consequently the emoluments, of the office of constable should be parcelled out among the several constables of the township. As the law stood before, it was in the power of the justices, from favoritism or other consideration, to give a monopoly of the profits of the office to one constable, to the ruin of the rest, and there was no redress. To prevent such results in the interest and for the benefit of the constable, and his only, the act was passed making it the duty of the justice to deliver his process to the constable required to reside in the district embraced in his ward, except where otherwise directed by the plaintiff in the process. It was not the purpose of the act, not did it have the effect, to reduce township constables to the grade of ward or district officers. All remained township officers, with powers and jurisdiction coëxtensive with the township, after, as before, the passage of the act. Nor did it have the effect to change the form of the civil process; all such processes properly continued, as before, to be addressed "To any Constable of St. Louis Township." There is nothing in the act to countenance the idea that the Legislature meant that a wrong delivery of process should have the effect of rendering such process void. The only effect it would have would be, possibly, to expose the justice to an action for damages at the suit of the injured constable, for the loss of the fees which he would have been entitled to had the justice performed his duty as required by the law. The enforcement of an execution by an interdicted constable

would not subject the plaintiff to an action by the defendant, nor can there be any doubt that payment to such constable would work the extinguishment of the judgment. The statute is, in my view, purely directory; and a disregard of its requirements by the justice is not necessarily fatal to the process, as supposed by the court below.

But if it was conceded that, in the case at bar, the execution was erroneous by reason of its improper delivery, still the instruction ought not to have been given. The fault was not apparent on the face of the paper. No note or memorandum was required to be endorsed on the execution by the justice to show compliance with the statutory requirement, and none was endorsed.

Nothing appearing on the face of the process to invalidate it, the defendant, according to the well settled law, would have been justified in the execution of it, (2 Strange, 710; Savacoal v. Boughton, 5 Wend. 170; Milburn v. Gilman, 11 Mo. 64,) and, if justified, then he was bound to execute it, and would not be heard to question its validity. (Ladbroke v. Cutchell, 2 T. R. 653; 5 Wend. 170; 11 Mo. 64.)

Let the judgment be reversed and the cause remanded; Judge Bay concurring.