SEPT'R TERM,
1841.

Davis
v.
Wood.

DAVIS v. WOOD.

1. The 2d section of 6th article of the act relating to Justices' Courts, (R. C. 1835, p. 362,) prescribing the manner of taking confessions of judgments, relates to confessions taken where there is no process.

2. The 19th section of 5th article of the constitution, and the 10th section of the 2d article of the act relating to Justices' Courts, directing that all writs and process shall run in the name of the "State of Missouri," are merely directory, and neither expressly makes void a writ not in conformity with its provisions. If the defendant appears and answers to the action, any defect in the writ, in this respect, will be cured. (Charless v. Marney, 1 Mo. R. 537; Fowler v. Walton, 4 Mo. R. 27; Little v. Little, 5 Mo. R. 227; Overruled on this point.)

3. The 14th section of the act relating to executions, (R. C. 1835, p. 255,) exempts from execution the necessary tools and implements of trade of any mechanic, *only* whilst carrying on his trade. If a mechanic conceives the design of absconding, and ceases the prosecution of his trade, the moment he leaves his trade, his tools and implements become subject to execution.

4. A. delivered the key of his house to B., not with the view to put the former in possession of the house, but only of the property therein contained. Held that B. had not such a possession as would enable him to maintain trespass for breaking and entering the house.

Error to Circuit Court of Saline county.

*Todd for Plaintiff.*

1st. That there was no judgment in one of the cases in the transcript of judgment offered. It contains a statement of debt and interest and costs; and the entry is "the defendant appeared and acknowledged that the above is just."

2d. The transcripts show no written confession of judgment signed by the party, and is void by statute. See Digest.

3d. The executions purporting to issue thereon, do not run in the name of the State, and are void. The caption of each is "State of Missouri, County of Saline, ss. to wit: To the Constable, &c."

4th. The law is, that the tools of a mechanic are exempt from levy by execution, the owner may lawfully sell them, although executions are in the hands of the officer.

5th. The instructions of the defendant misled the jury,

and were not predicated on any evidence, for the officer did not require the tresspass, and did not perform it himself, and it was not done in aid of the officer.

6th. The instruction of defendant is erroneous—that any lien existed in favor of the executions, before levy. See Mo. Digest, 362, 32, 258, 256, 337, 318, 319; Mo. Rep. 1 vol. 537; Fowler v. Watson, vol. 4th, 27.

*Winston for Defendant.*

1st. That the implements of trade and tools of Harlow were under the circumstances of the case liable to the lien of the executions in the hands of the constable, at the time they were sold to the plaintiff.

2d. That the defendant was justifiable in breaking into the house.

*Opinion of the Court by Scott, Judge.*

The plaintiff brought an action of trespass *quare clausum fregit,* against the defendant for breaking and entering his close, and taking away his goods. The defendant pleaded not guilty and justification, alleging that he acted as agent of one Thomas Duncan, who had obtained two judgments against one Harlow, on which executions were issued and delivered to the constable. That the said Harlow had goods locked up in the house in the declaration mentioned, and that the plaintiff was requested to open the door of the house, that the executions might be levied, which he refused to do; and that therefore the said defendant by the commandment, and in aid and assistance of the constable, opened the door of the house, and thereupon the constable entered and seized the goods.

It appears from the evidence preserved in the cause, that, the defendant, as agent for Thos. Duncan, obtained two judgments and executions against one Harlow. Harlow was a wheelwright. A short time before the levy of the executions, he went to the plaintiffs in the night, and told them he was indebted to them, and that he was about to leave the

neighborhood, that he would deliver them the key of his shop, that they might have the property left in it to pay themselves, and the key was delivered. Harlow left the neighborhood that night clandestinely, and has not been since heard of. He carried on his trade until he absconded. The goods were locked up in the shop he had occupied and consisted mostly of the implements of his trade, That shortly after Harlow absconded, the defendant, with the constable, came to the plaintiffs and demanded of them the key of Harlow's shop, in order that he might get the goods in it to satisfy the executions. The plaintiffs refused to deliver the key, alleging that the house was in their possession, and that they owned the goods, having purchased them of Harlow. The constable then declined breaking open the door, but told the defendant if he would open the door, he would levy on the goods found in the house. The defendant then forcibly raised the door off the hinges, and then the constable entered, and seized the property and sold it. Upon the trial, the plaintiffs submitted to a nonsuit, and afterwards moved to set it aside for the misdirection of the judge, and because improper evidence was admitted. The judgment offered in evidence, after stating the names of the parties, and the proceedings on the summons, runs thus, "the defendant appeared and acknowledged that the above is just on the day of trial ; also, 81¼ cents for justice's costs. Given under my hand, &c." The plaintiff's counsel contends that the above is not such a confession as is required by the statute. The act concerning justices' courts, article second, section four, says : Suits may be instituted before a justice, either by the voluntary appearance and agreement of the parties, or by process. The second section of the sixth article, prescribing the mode of taking confessions of judgments, relates to confessions taken where there is no process. In this case there was process, and the party appeared on the day of trial, and acknowledged the justice of the demand. If he had appeared and said nothing, or had refused to appear, the demand being liquidated, judgment would have been rendered against him. An express acknowledgment of the justice of the debt must have as much weight as a

*The 2d sec. of 6th art. of the act relating to justices' courts, (R. C. 1835, p. 362,) prescribing the manner of taking confessions of judgments, relates to confessions taken where there is no process.*

refusal to answer it. It is also objected that there was no judgment entered on the confession. This court in the case of Rutherford v. Winn, 3d vol. Mo. Reps. says, It will give the effect of a judgment to the verdict of a jury, so soon as it is entered on the docket of the justice. This principle is applicable to the question under consideration. The counsel for the plaintiffs also objected to the admission of the executions in evidence, because they did not run in the name of the State. It may well be questioned whether that clause which directs that writs and process shall run in the name of the State, as it also requires all writs to be tested by the clerk, is not applicable alone to writs issued from the higher courts and courts having a clerk. But however this may be, the statute concerning writs directs that those emanating from justices' courts shall run in the name of the State. In our government, jurisdiction is conferred by the constitution, and on the superior and inferior courts, and writs are only part of the machinery employed by courts for the exercise of the jurisdiction with which they are invested. It is not perceived how a writ wanting a constitutional requisite is more defective than a writ wanting a statutory one. The constitution as well as the statute is merely directory, and neither the one nor the other expressly makes void a writ not in conformity to its provisions; and if it be said the justice is sworn to support the constitution, so too he is sworn to observe the laws prescribed for the government of his official conduct. If the court has jurisdiction of the subject matter, any irregularity or error in the process will not make the officer, nor those acting under him, trespassers.

Notwitstanding the error, it is a justification. Miller v. Brown, 3d vol. Mo. Rep. 127. The judge on the trial instructed the jury, that if they believed from the evidence, that the property was Harlow's, and that it was in his possession whilst the execution was in the hands of the officer unsatisfied, then the execution was a lien upon the property, and Harlow could not defeat the claim of the plaintiff in the execution by a sale of the same. That the implements of trade and necessary tools of any mechanic whilst carrying

SEPT'R TERM, 1841.

Davis
v.
Wood.

The 19th s. of 5th article of the constitution, and the 10th sec. of the 2d art. of the act relating to justices' courts, directing that all writs and process shall run in the name of the 'State of Missouri,' are merely directory, and neitherther expressly makes void a writ not in conformity with its provisions. If the defendant appears and answers to the action, any defect in the writ, in this respect, will be cured.— (Charless v. Marney, 1 M. R. 537; Fowler v. Watson 4 Mo. R. 27; Little v. Little, 5 Mo. R. 227. Overruled on this point.

SEPT'R TERM, 1841.

Davis
v.
Wood.

The 14th s. of the act relating to executions, (R. C. 1835, page 225) exempts from execution the necessary tools and implements of trade of any mechanic, only whilst carrying on his trade. If a mechanic conceives the design of absconding, and ceases the prosecution of his trade, the moment he leaves his trade, his tools and implements become subject to execution. A. delivered the key of his house to B. not with the view to put the former in possession of the house, but only of the property therein contained.—Held that B. had not such a possession as would enable him to maintain trespass for breaking and entering the house.

on his trade, are exempt from execution, but if a mechanic conceives the design of absconding, and ceases the prosecution of his trade, the moment he leaves his trade his tools and implements become subject to the lien of an unsatisfied execution of an officer. The jury was farther directed that they must believe from the evidence, that the possession of the house was in the plaintiffs, to enable them to recover. Without determining whether an execution in the hands of a constable is a lien on the property of the defendant in the writ, before an actual levy of the same, it is the opinion of the court, that the last instruction to the jury was correct; and from the evidence preserved in the bill of exceptions, it does not appear that the plaintiffs had possession of the house, the forcible breaking and entering of which they complain. The delivery of the key of the house was not made with a view to put them in possession of it, but of the property therein contained. There is no evidence that the plaintiffs were possessed of the house, nor do they prove any title to it, which if the house was vacant might have drawn to it the possession, and the taking and converting the property being laid in the declaration as a mere aggravation, by their failure to prove a right to maintain trespass for breaking and entering the house, which is the gist of the action, the whole action fails, and they cannot recover in respect of matter laid in aggravation.　See Starkie, 814.

Judgment affirmed.