## Harvey, Appellant, *v.* City of Hazleton.

*Municipalities—Cities—Third class cities—Mayor's salary—Acts of June 27, 1913, P. L. 568, and May 27, 1919, P. L. 310—Hazleton—Salary ordinance of December 5, 1913.*

Article VII, section 15, of the Clark Act of June 27, 1913, P. L. 568, relating to cities of the third class, gave to the council of each such city the duty and privilege of fixing, within certain limitations, the salary to be paid the mayor, and established a schedule of salaries applicable until different salaries should be ordered by the cities concerned.

Section 27 of the Act of May 27, 1919, P. L. 310, made no change in the law of 1913 except to strike out certain superfluous and perhaps misleading clauses therein; in all other respects reënacted the provisions of the Act of 1913.

The provisions of the Act of 1913 thus reënacted by the Act of 1919 operate only as a continuance of the Act of 1913, and date from their original adoption, not from the subsequent reënactment, and are not new law.

The City of Hazleton having fixed the salary to be paid the mayor by ordinance of December 5, 1913, was not required by the Act of 1919 to pass the ordinance a second time. The ordinance remains in force and, until changed, governs the salary to be paid.

*Statutes — Construction of statutes — Amendments — Reënactments.*

When a statute continues a former statute law, the law common to both acts dates from its first adoption, and only such provisions of the old act as are left out of the new one are gone, and only new provisions are new laws. Where an act is amended "so as to read

as follows," the part of the original act which remains unchanged is considered as having continued in force as the law from the time of its original enactment and the new portion as having become the law only at the time of the amendment.

Argued March 5, 1923.    Appeal, No. 15, March T., 1923, by plaintiff, from judgment of C. P. Luzerne County, July T., 1922, No. 346, upon an agreed statement of facts in the nature of a special verdict, in the case of James G. Harvey v. City of Hazleton.    Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.    Affirmed.

Case stated to determine the right of plaintiff to collect increased salary as mayor.    Before JONES, J.

The facts are stated in the opinion of the Superior Court.

The court entered judgment for the defendant.    Plaintiff appealed.

*Error assigned* was the judgment of the court.

*W. A. Valentine* for appellant.

*John H. Bigelow,* and with him *Charles F. McHugh* and *Edwin B. Morgan,* for appellee.

OPINION BY KELLER, J., April 16, 1923:

This appeal is concerned with the construction to be given article VII, section 15 of the Act of June 27, 1913, P. L. 568, commonly known as the Clark Act, providing for the incorporation, regulation and government of cities of the third class, as amended by section 27 of the Act of May 27, 1919, P. L. 310.

Article VII of the Clark Act relates to the executive department of such cities, and section 15 thereof (p. 600) makes provision for the salary of the mayor.    It directs that he shall receive an annual salary to be fixed by ordinance, payable in monthly installments, and, as originally enacted, continued as follows: "The council

*in said city* shall, by ordinance, fix the amount of the salary to be paid the mayor for his services, and may provide for the assessment and reduction therefrom of reasonable fines for absence from regular or special meetings of the council or councilmanic committees. The amount of *said* salary in cities of the third class shall not be less than $500, nor more than $3,500, per year. *For the first term of any mayor elected under the provisions of this act, and* until *thereafter* changed by ordinance, the salary of said mayors in cities of the third class shall be as follows: In cities having a population of 15,000 or under, by the last United States census, $500; in cities having a population of over 15,000, and less than 30,000 inhabitants, $1,200 per year; in cities having a population exceeding 30,000, and not exceeding 50,000 inhabitants, $2,500 per annum; in cities having a population of over 50,000, and not exceeding 70,000 inhabitants, $3,000 per annum; in cities having a population of over 70,000 inhabitants, $3,500 per annum. *The first council elected under the provisions of this act, shall, by ordinance, fix the salary to be paid to the mayor in said cities for succeeding terms;* and the amount of compensation for the mayor in any of said cities shall not be increased or diminished during the term of office for which he shall be elected. Succeeding councils may change the amount of such compensation."

The Act of May 27, 1919, supra, amended forty-eight sections of the Clark Act. Section 27 of the Act of 1919 amended section 15 of article VII above, and it altered the words just quoted only by omitting those italicized. It made no change in the amount of the salary to be paid the mayor, or any other substantial alteration. It eliminated the unnecessary reference to "the first term of any mayor elected under the provisions of this act" and the word "thereafter," following and, referring to it, and also omitted the superfluous and somewhat illogical direction that "the first council elected under the provisions of this act, shall, by ordinance, fix the salary to

be paid the mayor in said cities for succeeding terms";
in all other substantial respects it remained the same.

The case stated furnishes us with the following facts:

On December 5, 1913, the council of the City of Hazleton, a third-class city, enacted an ordinance fixing the salary of the mayor at $1,200 per annum. By the census of 1910, Hazleton had a population of 25,452; by the census of 1920, promulgated in July, 1921, a population of 32,477.

Appellant was elected mayor of Hazleton, on the second Tuesday of November, 1921, and began his term of office on the first day of January, 1922.

He claims that by virtue of the Act of 1919, supra, his salary was fixed at $2,500 until changed by ordinance, and as the ordinance enacted by council fixing the salary at $1,200 was passed before the Act of 1919, it did not apply to him. The city, on the other hand, contends that the Act of 1913 imposed on council the duty of fixing the salary of the mayor; that it did so by ordinance approved December 5, 1913, and fixed it at $1,200; that the Act of 1919 effected no substantial change in this section of the Act of 1913 and did not require a reënactment of the ordinance, which remained in force and governed the salary to be paid appellant; that the reënactment in 1919 of the substantial portions of the Act of 1913 did not require a repassing of the ordinance fixing the mayor's salary. The court below adopted the city's contention and we are not convinced that its view of the case is wrong.

We have already pointed out that the only change effected by section 27 of the Act of 1919 was to eliminate the reference to "the first term of any mayor" and the duty "of the first council" to fix the salary to be paid the mayor "for succeeding terms." As expressed in the original act it was clumsy and might be misleading, and if by "the first term of any mayor" was meant "the term of the first mayor," it was pointed out by the court below, that "the term of the first mayor and of the first council

had expired; the legislation contemplated as to them and by them in the Act of 1913 was completed; it could serve no further purpose and was, therefore, eliminated in the amendatory Act of 1919; in every other respect the Act of 1919 is a reënactment of the Act of 1913." No other reason for enacting this amendatory section is apparent.

Appellant's whole reliance is upon the clause "Until changed by ordinance the salary of said mayors shall be as follows": etc. But we have already noticed that this phrase is not a new enactment, but is merely a reënactment of the Act of 1913, omitting the word, "thereafter," from between "Until," and "changed," which was rendered unnecessary when the previous reference to the "first term of any mayor," to which it related, was struck out. The question then resolves itself into, whether this clause must be considered as of the date of the amendatory Act of 1919 or is referable back to the original Act of 1913, in which it first appeared.

The law on this subject is well stated in Ruling Case Law, vol. 25, p. 907, section 159, as follows: "When a statute continues a former statute law, that law common to both acts dates from its first adoption, and only such provisions of the old act as are left out of the new one are gone, and only new provisions are new laws. Where an act is amended 'so as to read as follows,' the part of the original act which remains unchanged is considered as having continued in force as the law from the time of its original enactment and the new portion as having become the law only at the time of the amendment."

This statement of the law is supported by numerous decisions from other jurisdictions, as well as by several from our own State.

In St. Louis v. Alexander, 23 Mo. 483, it appeared that the Act of February 8, 1843, incorporating the City of St. Louis provided: "The city shall not, at any time, become a subscriber for any stock in any corporation." By a special enabling act approved March 1, 1851, the city

6    HARVEY, Appellant, *v.* CITY OF HAZLETON.

was authorized to subscribe to the stock of the Ohio &
Mississippi Railroad Co. any amount not exceeding
$500,000. Two days later, on March 3, 1851, an amended
city charter for St. Louis was approved which contained
the same provision as above set forth, viz: "The city
shall not, at any time, become a subscriber for any stock
in any corporation." Held, that the Act of March 3,
1851, did not repeal the enabling Act of March 1, 1851,
and that a subscription to stock made under that act
was valid. The court said: "When a former provision
is included in a revised law it is thereby intended to con-
tinue its existence, not to make it operate as an original
act to take effect from the date of the revised law. The
revision has not the effect of breaking the continuity of
those provisions which were in force before it was made"
(p. 559). In Cape Girardeau v. Riley, 52 Mo. 424, the
same court said: "The revision of a law does not have
the effect of making the revised law entirely original, so
as to be construed as though none of its provisions had
effect but from the date of the revised law; when a
former provision is contained in a revised law it operates
only as a continuance of its existence and not as an
original act." In State v. Mines, 38 W. Va. 125, 18 S. E.
470, it was said: "Where a statute is amended and reën-
acted the portions of the amended sections which are
simply repeated from the old law are not considered as
repealed and reënacted but as law continuously from
their first enactment by the old act and not born of the
reënactment; while the new or changed portions are law
for the first time from the reënactment (Rep. ed. p. 473,
474). In McNeely v. South Penn Oil Co., 52 W. Va.
616, 44 S. E. 508, 517, the court recognized the principle
that "when a statute continues former statute law, that
law common to both acts dates from its first adoption
and only such provisions of the old act as are left out
of the new are gone, and only new provisions are new
laws." In Allison v. Hatton, 46 Oregon 370, 80 Pac. 101,
it was said: "The rule is that where a section of the stat-

ute is amended so as to read 'as follows': and the section is then set forth with the changes intended to be made, those portions of the old section that are merely copied into the amendment without change are not to be considered as reënacted or as a new statement of the law but are to be read as a part of the earlier statute." To the same effect, see Ely v. Holton, 15 N. Y. 595; Chamberlain v. City of Evansville, 77 Ind. 542; Junction City v. Webb, 44 Kans. 71, 23 Pac. 1073; Wright v. Oakley, 5 Metc. 406 (Mass.).

In Marquette v. Berks Co., 3 Pa. Superior Ct. 36, this court adopted the opinion of Judge ENDLICH, who said, (p. 39): "Being moreover a mere amendment of the section in question, the Act of 1887 is to be read into that of 1834 as if its provisions had always been there; ......and has no other force than to change the specified enactment it refers to, in the single particular in which it departs from the same."

In Haspel v. O'Brien, 218 Pa. 146, it was held that while the Act of June 4, 1901, P. L. 364, relating to municipal claims, in terms repealed the Act of February 3, 1824, P. L. 18, which gave taxes priority over mortgages, etc., yet as the provisions of the Act of 1824 were reënacted in substantially identical language in the later act, the law had not been changed by the Act of 1901, and that tax claims were entitled to priority on a sheriff's sale of the real estate over a mortgage entered before the Act of 1901 was passed. The court said: "The express repeal of the Act of 1824 was not for the purpose of changing the law, but in pursuance of a plan for simplifying the sources and facilitating the ascertainment of the statute law on the general subject of tax liens;...... when an act expressly repeals a former one and at the same time reënacts its exact provisions the intent is manifest that there shall be no change in the law. This is the general rule as shown by the numerous authorities cited by appellant, the effect of which is thus summed up in 26 Am. & Eng. Ency. of Law (2d ed.) 758, title 'Stat-

utes,' IX, 3, c: 'Where a statute is repealed and its provisions are at the same time reënacted by the repealing act, the effect according to the great weight of authority, is that the earlier statute is not in fact repealed, but its provisions continue in active operation, so that all the rights and liabilities incurred thereunder are preserved and may be enforced.'" (p. 149.)

In Searight's Est., Stuart's App., 163 Pa. 210, it was held that as the amending Act of June 1, 1887, P. L. 289, had reënacted without change, pro forma, the provisions of the Act of March 26, 1827, P. L. 129, limiting the lien of judgments, only for the purpose of adding a provision as to terre-tenants who had recorded their deeds, it had no effect as to such reënacted portion on the Act of February 24, 1834, P. L. 77, which had changed the law as enacted in 1827, as respects the lien of judgments against decedents, and except as to the new provision relating to terre-tenants was to be construed as if passed in 1827.

In Lewis v. Wyalusing Light, H. & P. Co., 62 Pa. Superior Ct. 282, we said, speaking through our Brother Trexler: "The prior acts of the legislature giving priority to tax claims were not repealed by the Act of 1911, and even if they had been apparently repealed, the latter act being in this respect merely a reënactment of the former act, the effect would be that the prior act would remain unrepealed and the priority in this respect continued in operation in that all the rights and liabilities incurred thereunder would be preserved and might be enforced" (p. 286).

Giving the subject full consideration we are of opinion that the Act of 1913 gave to the council of each third-class city the duty and privilege of fixing, within certain limitations, the salary to be paid the mayor of such city, and until so ordained by council established a schedule for salaries of mayors in such cities according to their population; that the City of Hazleton having by ordinance of council, approved December 5, 1913, fixed the

1, (1923).]          Opinion of the Court.

salary of the mayor at $1,200 per annum it remained as thus fixed until changed by a succeeding council, or by the legislature; that section 27 of the Act of 1919, made no change in the law of 1913 except to strike out the references to the salary "for the first term of any mayor" and to the duty of the first council to fix the salary of the mayor "for succeeding terms," as superfluous and perhaps misleading, but in all other respects reënacted the provisions of the Act of 1913; that the provisions thus reënacted, including the clause "until changed by ordinance," etc., operate only as a continuance of the Act of 1913 and date from their original adoption and not from their subsequent reënactment and are not new law; that the ordinance of December 5, 1913, was a valid exercise of the powers granted by the Act of 1913 and was not affected by its pro forma reënactment in 1919; that said ordinance still remains in force, did not have to be passed again after the Act of 1919 and, until changed, governs the salary to be paid the mayor of Hazleton.

The judgment is affirmed.